**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROSSIE ERNEST LEE EDWARDS III, individually and on behalf of all others similarly situated, | Civil Action No. 2:26-cv-4682 |
| Plaintiff, | [Removed from the Pennsylvania Court of Common Pleas of Philadelphia County, Case No. 251102320] |
| v. | |
| TRUIST BANK, | |
| Defendant. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Truist Bank ("Truist") hereby removes this case from the Pennsylvania Court of Common Pleas of Philadelphia County (the "State Court") to the United States District Court for the Eastern District of Pennsylvania on the following grounds:

(1)    ***CAFA Jurisdiction***:  This Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453 because minimum diversity exists, the amount of controversy exceeds $5 million, and the number of members of the proposed putative class in the aggregate is at least 100 class members.

In support of this Notice of Removal, Truist states as follows:

### I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On or about November 17, 2025, Plaintiff Rossie Ernest Lee Edwards III ("Plaintiff") filed a Class Action Complaint in Case No. 251102320, titled *Edwards v. Truist Bank*, in the Pennsylvania Court of Common Pleas for Philadelphia County (the "State Court Action"). A copy of the Class Action Complaint in the State Court Action, along with copies of the process,

1

pleadings, and orders served upon Truist in the State Court Action are attached hereto as **Exhibit 1**.

2. On December 23, 2025, Truist timely removed the State Court Action to the United States District Court for the Eastern District of Pennsylvania, at Case Number 2:25-cv-07280-WB (the "Federal Court Action").

3. On January 20, 2026, Plaintiff moved to remand the matter to state court, arguing that Plaintiff "has not alleged . . . any injury-in-fact to confer standing under Article III of the U.S. Constitution[.]" Federal Court Action at ECF No. 17. Truist opposed the motion to remand, arguing that Plaintiff had Article III standing and could not disclaim damages on behalf of a class, and Plaintiff filed a reply. Federal Court Action at ECF Nos. 21, 25.

4. On March 26, 2026, the Court issued an Order remanding the case to state court, finding that while CAFA's jurisdictional thresholds were met, Plaintiff lacked Article III standing. Federal Court Action at ECF Nos. 27, 28.

5. On April 27, 2026, the remand order was certified in the State Court Action, and the state court issued a Class Action Initiation Order on May 14, 2026. *See* **Exhibit 1.**

6. Following remand to the state court, on May 27, 2026, Truist filed preliminary objections to Plaintiff's Complaint on the basis that Plaintiff failed to plead sufficient law and facts to state claim. *Id.*

7. In response, Plaintiff filed an Amended Complaint on June 16, 2026, which included a new allegation at Paragraph 37 which states, "Truist sent Mr. Edwards and the class of consumers he seeks to represent post-repossession notice that was ***false and misleading*** as to the date of mailing and the right to redeem." **Exhibit 2**, Am. Compl. (emphasis added).

8.      As set forth more fully below, Truist's position is that Plaintiff has now pled an informational injury sufficient to confer Article III standing in the federal courts, and as such, files a second timely Notice of Removal.

9.      In the Amended Complaint, Plaintiff continues to assert a claim against Truist in its role as "an auto lender to redress [alleged] systemic violations of Pennsylvania's Uniform Commercial Code ("UCC"), 13 Pa. C.S. § 9601, et seq."  The Plaintiff asserts that "[t]he UCC requires secured parties who utilize self-help repossession to provide consumers with proper notices when repossessing a financed vehicle." **Exhibit 2**, Am. Compl. ¶¶ 1-2.

10.     Plaintiff is a resident of Red Lion, Pennsylvania. *Id.* ¶ 7.

11.     Truist is a state-chartered bank with its headquarters in North Carolina. *See* **Exhibit 3**, Declaration of Stewart Gray Lamm ("Truist Decl.") at ¶ 3.

12.     Plaintiff asserts claims against Truist for violation of the Uniform Commercial Code ("UCC"). *See* **Exhibit 2**, Am. Compl. ¶¶ 60-63.

13.     Plaintiff and Class Members seek statutory damages pursuant to 13 Pa.C.S. § 9625(c)(2). *Id.* ¶ 44.

14.     Plaintiff seeks to represent a putative class of "All Persons (a) who financed the purchase of a motor vehicle for consumer use through Truist Bank via an installment sale contract, or who financed the purchase of a motor vehicle for consumer use via another entity but such installment sale contract was thereafter assigned to Truist; (b) from whom Truist, as secured party, repossessed the vehicle or ordered it repossessed; (c) who had a Pennsylvania address as of the date of repossession; (d) who were sent a post-repossession notice of rights: (1) which set forth a date after which the collateral may be sold that was less than 15 days from the date the notice was mailed to the debtor (not counting the day the notice was mailed); or, (2) where such notice was

3

mailed more than one full business day after the date of repossession; (e) in the period commencing six years prior to the date of filing of the Complaint through the date of class certification." *Id.* ¶ 48.

15.     Plaintiff alleges the case "involves form notices sent out to Pennsylvania consumers in Philadelphia County and elsewhere" and that Truist "employed uniform post-repossession notice and mailing practices with respect to consumer repossessions across Pennsylvania." *Id.* ¶¶ 34, 49.

16.     Plaintiff alleges that "there are many members in the Class, making them so numerous that joinder of all members is impractical." *Id.* ¶ 49.

## II.    THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

17.     Pursuant to 28 U.S.C. §§ 1332 and 1441, removal to this Court is proper under the Class Action Fairness Act ("CAFA").  Under CAFA, this Court has jurisdiction over class actions where: (1) there is minimal diversity (*i.e.*, the citizenship of at least one plaintiff is diverse from the citizenship of at least one defendant), 28 U.S.C. § 1332(d)(2); (2) there are at least 100 putative class members, 28 U.S.C. § 1332(d)(5)(B); (3) the amount in controversy based upon the class members' aggregate claims exceeds $5 million exclusive of interest and costs, 28 U.S.C. § 1332(d)(2); (4) the primary defendants are not states, state officials, or other governmental entities against whom the district court may be prevented from ordering relief, 28 U.S.C. § 1332(d)(5)(A); and (5) the 30-day deadline for removal is met, 28 U.S.C. § 1446(b).  CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

18.     As required by 28 U.S.C. § 1441, Truist seeks to remove this case to the United States District Court for the Eastern District of Pennsylvania, which is the District Court embracing the place where the State Court Action has been filed.

4

### A.    Minimal Diversity Exists

19.    To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2).

20.    For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. 1332(c)(1).  Truist is a state-chartered bank with its headquarters in North Carolina.  *See* Truist Decl. ¶ 3.  *See Henderson v. Truist Bank*, No. 122-CV-00341, 2022 U.S. Dist. LEXIS 218912, at *7-8 (E.D. Va. Dec. 5, 2022) (noting Truist is a citizen of North Carolina for diversity jurisdiction purposes).

21.    Plaintiff is alleged to be a citizen of Pennsylvania.  **Exhibit 2**, Am. Compl. ¶ 7. Diversity therefore exists between the parties under CAFA.

### B.    The Putative Class Consists of More Than 100 Members

22.    Based on Truist's preliminary investigation of the putative class and reliance on Plaintiff's allegations in the Class Action Complaint, there are more than 1,027 Truist accounts related to persons who financed the purchase of a motor vehicle through Truist or a subsidiary via an installment sale contract, or who financed the purchase of a motor vehicle via another entity but such installment sale contract was thereafter assigned to or owned by Truist, from whom Truist, as a secured party, repossessed the vehicle or ordered it repossessed, who had a Pennsylvania address as of the date of the repossession, and who were sent a post-repossession Notice of Plan to Sell Property or post-repossession notice of rights in the period commencing from 2022[1] to the

---

[1] For purposes of removal, Truist is only providing data for a portion of the class period, and it does not have alleged statutory damages data readily available for the 1,027 above identified accounts.  There are additional accounts at issue that have since been located but are not included

5

present.  *See* Truist Decl. ¶ 5.  The aggregate membership of the proposed class is therefore at least 100 as required under CAFA.

**C.       As Alleged, the Aggregate Amount in Controversy Exceeds $5 Million**

23.       Under 28 U.S.C. § 1332(d), a class action is removable if the aggregate amount in controversy is greater than $5 million, exclusive of interest and costs.  *See* U.S.C. § 1332(d)(2).

24.       To invoke federal court jurisdiction, a notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.").  *Id.* at 87.

25.       Here, Plaintiff does not allege a specific amount in controversy.  Thus, the Court may consider the Notice of Removal and other relevant documents concerning the amount in controversy.  *See The Bachman Co. v. MacDonald*, 173 F. Supp. 2d 318, 322-23 (E.D. Pa. 2001) (in assessing amount in controversy, "the court must first look to the complaint . . . . [and] may also look to the Notice of Removal, stipulations . . . affidavits, and other documentation that is relevant to the value of the claims at issue"); *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).  "Because the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy, a defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court." *Lorah v. SunTrust Mortg., Inc.*, No. 08-703, 2009 U.S. Dist. LEXIS 12318, at *14-15 (E.D. Pa. Feb. 18, 2009), as corrected (Feb. 19, 2009) (citations omitted).

---

in the calculations for purposes of removal, as the jurisdictional requirements have been met.  *See, Federal Court Action*, ECF No. 27, at 4.

26.    Further, a defendant seeking removal under CAFA may rely on the allegations and facts represented in the complaint to establish its analysis of whether the amount in controversy is met. *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 488 (W.D. Pa. 2009); *Carney v. British Airways PLC*, No. 2:25-CV-00302-CCW-CBB, 2025 U.S. Dist. LEXIS 223638, at *13 (W.D. Pa. Nov. 13, 2025) (accepting defendant's reliance on complaint allegations to support CAFA jurisdiction).

27.    Under CAFA, the claims of individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).   In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42.

28.    Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction:

> [I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case. . . . Overall, new section 1332(d) is intended to ***expand substantially federal court jurisdiction over class actions***. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.

S. Rep. 109-14, at 42-43 (emphasis added).

29.    "[F]ederal jurisdiction exists unless it appears, to a legal certainty, that the plaintiff was never entitled to recover the jurisdictional amount." *Kaufman*, 561 F.3d at 151 (citing *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007)).

30.    Here, Plaintiff and Class Members seek statutory damages pursuant to 13 Pa.C.S. § 9625(c)(2) of "not less than the credit service charge plus 10% of the principal amount of the obligation." **Exhibit 2**, Am. Compl. ¶ 44.  Plaintiff set forth that "statutory damages are derived from a simple, straightforward and uniform arithmetic calculation" based on figures "plainly visible on and determinable from the face of each consumer's installment sale contract." *Id.* ¶¶ 45-46.

31.    While Truist denies any liability as to Plaintiff's claims, based on the allegations, claims, and prayer for relief set forth in the Complaint, the amount in controversy in this action, exclusive of interests and costs, exceeds the sum of $5,000,000.  Truist does not concede and reserves the right to challenge Plaintiff's theory of liability and damages, including that the proposed class will necessarily include each and every one of the accounts identified for purposes of removal.  Truist's establishment of the amount in controversy, as set forth below, is based on assumptions for purposes of removal only as to the amounts that Plaintiff claims to be able to recover if he prevailed on his claims.

    **i.    Statutory Damages Pursuant to 13 P.C.S.A. § 9625(c)(2)**

32.    Based on Truist's preliminary investigation of the putative class, the class as alleged includes more than 1,027 accounts.  Truist Decl. ¶ 5.

33.    Based on Truist's preliminary investigation, the statutory damages that Plaintiff seeks under 13 Pa.C.S. § 9625(c)(2) for those 1,027 accounts, as alleged, are $11,105,678.55.  *Id.* ¶¶ 6-7.

34.      Pennsylvania Statute Section 9625(c)(2) provides, in pertinent part: "a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price." 13 Pa. C.S. § 9625(c)(2).

35.      Based on Truist's preliminary investigation, the total amount of credit service charges for the 1,027 Truist accounts, as alleged, is $7,669,455.83. *See* Truist Decl. ¶ 6. Further, based on Truist's preliminary investigation, ten percent (10%) of the principal amount of the obligations of the 1,027 Truist accounts, as alleged, is $3,436,222.72. *Id.* ¶ 7.

36.      Accordingly, added together ($7,669,455.83 in credit service charges plus $3,436,222.72 in the statutory percentage of the principal amount owed), the minimum statutory damages provided by Section 9625(c)(2) are $11,105,678.55.

37.      Even if the class did not contain each and every account identified for purposes of removal, there is a reasonable probability that the class's alleged damages will exceed $5 million where only a portion of the identified accounts fall within the class. The average recovery of each account identified by Truist is $10,813.71 meaning that the class need only consist of 463 accounts to satisfy the amount in controversy ($5,000,000 divided by $10,813.71). *See Lewis*, 610 F. Supp. 2d at 488 (denying motion to remand upon calculation that only a portion of the vehicles identified by defendant as likely within the class as defined would be necessary to meet CAFA amount, particularly as plaintiffs alleged the issue to be uniform across all vehicles).

38.      Thus, in terms of minimum statutory damages alone, the amount-in-controversy far exceeds the jurisdictional threshold under CAFA.

9

### ii.    Alternatively, the Named Plaintiff's Damages Separately Confirm that the Amount in Controversy is Met

39.    Although it is clear from the more than 1,027 accounts at issue in the Class Action Complaint that the amount in controversy is well above the jurisdictional requirement under CAFA, Plaintiff's statutory damages further confirms the amount in controversy is met to a legal certainty.

40.    Courts allow confirmation of the amount in controversy by taking damages sought by the named plaintiff and multiplying by the number of putative class members.  *See e.g.*, *Frederico*, 507 F.3d at 199 (plaintiff's damages multiplied by potential class members alleged satisfied statutory minimum); *Clean Air Council v. Dragon Int'l Grp.*, No. 1:CV-06-0430, 2006 U.S. Dist. LEXIS 52292, at *10-11 (M.D. Pa. July 28, 2006) (CAFA amount in controversy met by multiplying potential class members by potential damages); *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 946 (8th Cir. 2012) (threshold met based on the damages alleged in plaintiffs' petition multiplied by the alleged number of class members potentially harmed); *Carter v. Westlex Corp.*, 643 F. App'x 371, 375 (5th Cir. 2016) (same)*; Faltaous v. Johnson & Johnson*, No. 07-1572, 2007 U.S. Dist. LEXIS 99473, at *18-21 (D.N.J. Nov. 5, 2007) (same).

41.    The minimum statutory damages under 13 Pa. C.S. § 9625(c)(2) is "an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price."

42.    The Retail Installment Sales Contract ("RISC") of the Named Plaintiff can be utilized to separately confirm the amount in controversy.

43.    Plaintiff's RISC provides that the finance charge for the purchase of the vehicle was $11,847.40 and the principal amount financed was $44,991.35.  *See* Truist Decl. ¶ 8 **Exhibit**

**3**, at Ex. A.  Plaintiff seeks to recover $16,346.54 in minimum statutory damages ($11,847.40 credit service charge + $4,499.14 (10% of the principal obligation)).

44.    Taking Plaintiff's potential minimum statutory damages ($16,346.54) and multiplying that number with (at least) 1,027 accounts that fit the criteria as defined herein, the amount of minimum statutory damages would total $16,787,896.58.  Even this conservative calculation of minimum statutory damages at issue in the Class Action Complaint, confirms the $5 million threshold amount in controversy is met to a legal certainty.

45.    Conversely, taking Named Plaintiff's minimum statutory damages ($16,346.54), and dividing by the $5 million amount in controversy threshold, the amount in controversy would be met if 306 accounts of the identified account were provided a Notice of Plan to Sell Property or equivalent post-repossession notice of rights which set forth a time period for sale of the collateral or timing of mailing that Plaintiff contends is a violation of the statute.

46.    Accordingly, the minimum statutory damages under 13 Pa.C.S. §9625, without even taking into account potential bars to recover the deficiency balances under the UCC, injunctive relief, and attorneys' fees establish that the $5 million amount in controversy jurisdictional requirement under CAFA is met.

  **D.**  **Defendant is Not a State or State Official**

47.    Defendant Truist is not a state nor a state official.

**III.    PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

48.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3), which provides that such Notices "may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

49.    Truist filed this Notice of Removal within 30 days of June 16, 2026, the date on which Truist was served with the Amended Class Action Complaint containing allegations of informational injury providing for standing in the Federal Court Action.  The Amended Class Action Complaint was the first pleading from which it could be ascertained "that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3).  Accordingly, this action is being removed within 30 days of the first date after the receipt by Truist of service of any paper giving it notice that the action is removable.

50.    A copy of this Notice of Removal is being filed with the State Court and served upon Plaintiff in accordance with 28 U.S.C. § 1446(d).

51.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the process, pleadings, and orders served upon Truist in the State Court Action are attached hereto as **Exhibit 1**.

52.    Removal to this Court is appropriate.  Pursuant to 28 U.S.C. §1441(a), removal to this Court is appropriate because it is the "district court of the United States for the district and division embracing the place where [this] action is pending."

53.    Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by Truist of any fact, of any validity or merits of any of Plaintiff's claims, causes of action, theory of damages, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Truist's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.  Truist expressly reserves the right to amend or supplement this Notice of Removal, should any aspect of this removal and/or the information set forth herein be challenged.

12

54. None of the exceptions contained in 28 U.S.C. § 1332(d) prevent this Court from exercising jurisdiction over this class action.

55. Therefore, this case may be removed because (i) there is diversity of citizenship between the parties; (ii) this is a civil class action for monetary relief in which more than 100 persons are proposed to be tried jointly; (ii) the amount in controversy exceeds $5 million, exclusive of interests and costs; and (iv) no exceptions apply.

### IV.   PLAINTIFF HAS PLED FACTS SUFFICIENT TO CONFER ARTICLE III STANDING

56. While not a requirement for removal under CAFA, Truist preliminarily addresses Plaintiff's standing.

57. Plaintiff's Amended Complaint specifically adds for the first time an allegation at Paragraph 37 which states, "Truist sent Mr. Edwards and the class of consumers he seeks to represent post-repossession notice that was ***false and misleading*** as to the date of mailing and the right to redeem." **Exhibit 2**, Am. Compl. ¶ 37 (emphasis added).

58. By Plaintiff's own admission in the State Court Action, this allegation was added to address arguments raised in Truist's Preliminary Objections and to avoid a potential dismissal for failure to state a claim.

59. At the same time, Plaintiff also seeks to disclaim any resulting damage, adding language to Paragraph 62 of the Amended Complaint disclaiming "any detrimental reliance on the defects in the notice[.]" *Id.* ¶ 62.

60. While this Court noted in its Order remanding the case to state court (Federal Court Action, ECF No. 27 at 5) that "[a] statutory violation, without more, does not satisfy the injury-in-fact requirement for Article III standing," Plaintiff has now alleged more than a statutory violation.

61.     If Plaintiff's sole claim was a bare statutory violation, there would be no reason to file an Amended Complaint to specifically add an allegation that the post-repossession notice was "false and misleading."   Such a factual allegation would be entirely irrelevant to Plaintiff's purported claim of a bare statutory violation.

62.     Plaintiff is pleading facts supporting an informational injury where statutorily required information was allegedly false and misleading in an attempt to avoid dismissal in the State Court Action.  *See Hudson v. Eaglemark Savings Bank*, 475 F. App'x 423, 426-27 (3d Cir. 2012) (affirming dismissal of claim for failure to plead commercial unreasonableness based on timing of notice under the UCC).

63.     However, the factual allegation supporting an informational injury arising from a "false and misleading" post-repossession notice also supports standing in this Court.  This is consistent with other cases arising from similar factual circumstances that have been held to properly belong in federal court.  *Nelson v. Bank of America, N.A.*, No. 23-0255, 2023 U.S. Dist. LEXIS 87098, *13-16 (E.D. Pa. May 18, 2023) (denying motion for remand where failure to receive the same information in post-repossession notice gave rise to standing); *Kelly v. Santander Consumer USA, Inc.*, No. 20-3698, 2021 U.S. Dist. LEXIS 25949 (E.D. Pa. Feb. 10, 2021); *Langer v. Capital One Auto Finance*, No. 16-6130, 2019 U.S. Dist. LEXIS 10575, at *11-12 (E.D. Pa. Jan. 23, 2019) (finding standing where repossession was done in a manner contrary to Pennsylvania law).

64.     As such, Plaintiff has standing in federal court.

WHEREFORE, Truist hereby removes the above-captioned action now pending in State Court to the United States District Court for the Eastern District of Pennsylvania.

14

Dated: July 6, 2026

Respectfully submitted,

**MCGUIREWOODS LLP**

/s/ *K. Issac deVyver*
K. Issac deVyver (Pa. Id. 202655)
Karla Johnson (Pa. Id. 307031)
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone:  (412) 667-7988
Facsimile:  (412) 667-7976
Email: kdevyver@mcguirewoods.com
Email: kjohnson@mcguirewoods.com

*Attorneys for Defendant Truist Bank*

15

## CERTIFICATE OF SERVICE

I hereby certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 6, 2026, and sent via U.S. Mail and/or email to participants not registered with the CM/ECF system:

Cary L. Flitter
Andrew M. Milz
Jody Thomas Lopez-Jacobs
Edward M. Flitter
Flitter Milz, P.C.
450 N. Narberth Ave., Suite 101
Narberth, PA 19072


/s/ K. Issac deVyver
K. Issac deVyver

*Attorney for Defendant Truist Bank*